OPINION
{¶ 1} Defendant-appellant, Russell Brown, appeals from a Monroe County Common Pleas Court judgment designating plaintiff-appellee, Martha Brown, as the residential parent and legal custodian of the parties' daughter and granting him supervised visitation.
 {¶ 2} Appellant and appellee met via the internet. Appellee was originally from Columbia, South America, and she came to the United States subsequent to the parties' communications over the internet. The parties were married on October 9, 1998. On May 27, 2000, their daughter Isabella was born. The parties resided together at appellant's residence in Graysville, Ohio. Appellant's parents lived nearby and enjoyed a close relationship with the parties and Isabella. The grandparents often provided care for Isabella and babysat her while the parties worked.
 {¶ 3} Appellant was employed by the Ormet Corporation and appellee started a small business, which she operated out of the basement of the parties' home. Appellee's business began to prosper and the parties agreed that appellant should quit his position to provide full-time care for their child. Appellant terminated his employment with Ormet on September 9, 2002.
 {¶ 4} Appellee filed a complaint for divorce on April 20, 2004. She also filed an ex parte motion for temporary custody of Isabella, which the court granted. The parties subsequently entered into a temporary agreement whereby appellee was designated as Isabella's residential parent and legal custodian and appellant was granted liberal visitation privileges. In addition, the parties agreed to use the paternal grandparents as much as possible as babysitters.
 {¶ 5} At the final hearing, both parties sought custody of Isabella. In the alternative, appellant also proposed a shared parenting plan. The trial court issued a divorce decree awarding full custody of Isabella to appellee and granting only supervised visitation rights to appellant. Appellant filed a timely notice of appeal on September 10, 2004.
 {¶ 6} Appellant raises two assignments of error. We will address his second assignment of error first for ease of discussion. It states:
 {¶ 7} "THE TRIAL COURT ERRED, ABUSED ITS DISCRETION, AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHEN IT FAILED TO AWARD CUSTODY OF THE MINOR CHILD TO DEFENDANTA-PPELLANT OR, IN THE ALTERNATIVE, WHEN IT FAILED TO AWARD SHARED PARENTING TO DEFENDANT APPELLANT."
 {¶ 8} Appellant argues that the trial court erred in granting appellee sole custody of Isabella. He first contends that the court should have awarded him custody of his daughter. Alternatively, appellant argues that the court should have adopted his proposed shared parenting plan. Appellant asserts that the evidence demonstrated: he provided a loving home life and stable relationship for Isabella; Isabella had a close relationship with her paternal grandparents; appellee attempted suicide; the suicide letter stated that appellant was a very capable father; appellee's home is unsanitary; appellant was Isabella's primary caregiver; and the parties' exercised a shared parenting arrangement prior to the divorce.
 {¶ 9} A trial court has broad discretion in matters concerning the allocation of parental rights and responsibilities and we will not disturb its decision on appeal absent an abuse of that discretion. Masters v. Masters (1994), 69 Ohio St.3d 83,85, 630 N.E.2d 655. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 10} In determining which parent should be awarded custody of a minor child in a divorce proceeding, the trial court is to consider what is in the child's best interest using the factors set out in R.C. 3109.04(F). The factors are as follows:
 {¶ 11} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 12} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 13} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 14} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 15} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 16} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 17} "(g) Whether either parent has failed to make all child support payments, * * *;
 {¶ 18} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *;
 {¶ 19} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 20} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C. 3109.04(F)(1).
 {¶ 21} In determining whether shared parenting is in the best interest of a child, the court is to consider all relevant factors including the best interest factors set out above, factors dealing with child support, and those factors set out in R.C. 3109.04(F)(2), which are:
 {¶ 22} "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 {¶ 23} "(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 {¶ 24} "(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
 {¶ 25} "(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 {¶ 26} "(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."
 {¶ 27} The trial court considered the factors set out in both of these sections in awarding custody of Isabella to appellee. Specifically, the court relied on nine findings, some dealing with appellant and others dealing with appellee.
 {¶ 28} The court had a concern for Isabella due to what it characterized as appellant's obsession with her and his lack of trust toward appellee. It also had concern with appellant's belief that bathing with and sleeping in the same bed with Isabella, a four-year-old girl, was appropriate. The court additionally expressed concern over an incident where appellant took Isabella to Columbus without telling appellee where he was going or how long he would be gone. Furthermore, the court had a problem with appellant's parents living nearby and "their undue influence" on appellee and Isabella.
 {¶ 29} Importantly, the court also made findings about appellee. It noted that she has strong support from friends and members of the community who will assist her in raising Isabella. Additionally, appellee recently secured a new residence, which is more than adequate for her and Isabella. Appellee has consistent employment and will be more than able to adequately provide for Isabella's needs. Finally, the court found that a shared parenting plan would not be appropriate since appellant does not trust appellee to properly care for Isabella.
 {¶ 30} The testimony at trial supports the trial court's findings. For instance, appellant testified that he would bathe with the child to save time and to keep track of her while he bathed. (Tr. 54). He stated that he stopped this joint bathing when Isabella was about three-and-a-half. (Tr. 55). He also stated that while he knew he could not bathe with Isabella forever, he did not think he did anything inappropriate. (Tr. 55). Additionally, appellant testified that Isabella slept in bed with him and appellee. (Tr. 54). Appellee testified that she attempted to put Isabella in her own room to sleep separately. (Tr. 74). However, appellant would go into Isabella's room and sleep on the floor. (Tr. 74-75).
 {¶ 31} As to appellant's lack of trust of appellee, appellee testified that appellant setup video cameras when she and Isabella would go swimming in order to monitor the child. (Tr. 73). She also testified that appellant did not allow her to drive anywhere alone with Isabella. (Tr. 73).
 {¶ 32} The parties also testified about appellant taking Isabella to his sister's house in Columbus. Appellee testified that one day Isabella was misbehaving. (Tr. 96). Appellee stated that appellant did not allow her to correct Isabella. Nonetheless, she grabbed Isabella by the arm and smacked her. (Tr. 97). The next morning, appellee claimed, appellant took Isabella to Columbus without informing her of where he was going. (Tr. 98). Appellant, however, contended that appellee knew where he was.
 {¶ 33} Additionally, an examination of the record reveals that appellee is a good mother to Isabella and that Isabella is well-cared for in appellee's custody.
 {¶ 34} Because the trial court considered the relevant factors and its decision regarding custody is supported by the evidence, we cannot conclude that the court abused its discretion in granting custody of Isabella to appellee. Additionally, because evidence indicated that appellant does not trust appellee, it was reasonable for the court to conclude that a shared parenting plan would not work between the parties. Accordingly, appellant's second assignment of error is without merit.
 {¶ 35} Appellant's first assignment of error states:
 {¶ 36} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ORDERED DEFENDANT-APPELLANT TO HAVE SUPERVISED PARENTING TIME WITH THE MINOR CHILD AS THE RECORD DOES NOT SUPPORT A FINDING THAT SUPERVISED PARENTING TIME WAS WARRANTED."
 {¶ 37} Appellant asserts that the court erred in granting only supervised parenting time to him. Appellant first argues that appellee never requested that he only be granted supervised parenting time. In appellee's motion for a temporary custody order, she sought to be Isabella's residential parent but she also requested that the court allocate all other parental rights and responsibilities to appellant. Second, appellant contends that the evidence does not support the court's order.
 {¶ 38} A trial court's decision regarding visitation matters is reviewed under an abuse of discretion standard. Braatz v.Braatz (1999), 85 Ohio St.3d 40, 44, 706 N.E.2d 1218. In furtherance of the child's best interest, the trial court has the discretion to limit or restrict visitation rights. Hoppel v.Hoppel, 7th Dist. No. 03-CO5-6, 2004-Ohio-1574, at ¶ 15.
 {¶ 39} R.C. 3109.051(D) lists fifteen factors that the trial court must consider when granting or modifying parental visitation rights and gives the court discretion to consider any other factor it finds relevant. Of those factors listed, the following are particularly relevant to this case:
 {¶ 40} "(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, * * *;
 {¶ 41} "(2) The geographical location of the residence of each parent and the distance between those residences, * * *;
 {¶ 42} "(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
 {¶ 43} "(4) The age of the child;
 {¶ 44} "(5) The child's adjustment to home, school, and community;
 {¶ 45} "* * *
 {¶ 46} "(7) The health and safety of the child;
 {¶ 47} "* * *
 {¶ 48} "(9) The mental and physical health of all parties.
 {¶ 49} "(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, * * *
 {¶ 50} "* * *
 {¶ 51} "(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 52} "(14) Whether either parent has established a residence or is planning to establish a residence outside this state." R.C. 3109.051(D).
 {¶ 53} The trial court did not mention this statute or any of its factors in the divorce decree or accompanying memorandum of opinion and decision. In its conclusions of law, the court noted that in making a custody determination it must consider the best interest factors set out in R.C. 3109.04(F)(1). It then listed the R.C. 3109.04(F)(1) factors. Additionally, the court noted that regarding shared parenting, it must consider the R.C.3109.04(F)(1) factors, the R.C. 3119.23 factors, and the R.C.3109.04(F)(2) factors. It then listed the R.C. 3109.04(F)(2) shared parenting factors. Nowhere though did the court state that it had to consider the R.C. 3109.051(D) visitation factors. The court focused its findings solely on the best interest factors set out in R.C. 3109.04(F)(1) and the shared parenting factors set out in R.C. 3109.04(F)(2). While some of the best interest factors are the same or similar to the visitation factors, other factors are unique to the visitation statute.
 {¶ 54} "Visitation" and "custody" are related but are distinct legal concepts. Braatz, 85 Ohio St.3d at 44, citingIn re Gibson (1991), 61 Ohio St.3d 168, 171, 573 N.E.2d 1074. R.C. 3109.04 governs the allocation of parental rights and responsibilities, or "custody," while R.C. 3109.051 governs visitation rights.
 {¶ 55} The Ohio Supreme Court has held, "[p]ursuant to R.C.3109.051(D), the trial court shall consider the fifteen factors enumerated therein, and in its sound discretion shall determine visitation that is in the best interest of the child." Braatz,
85 Ohio St.3d at paragraph two of the syllabus. Other courts have found that a trial court's decision that does not consider the R.C. 3109.051(D) factors must be reversed and remanded. SeeWalther v. Newsome (Apr. 20, 2001), 11th Dist. No. 99-P-0107 ("While we do not require the finder of fact to make a laundry list of the fifteen factors, we do require that the magistrate tell us which factors are irrelevant and which are relevant and why. Therefore, the trial court abused its discretion by adopting the magistrate's decision which did not apply R.C. 3109.051.");Curtis v. Curtis (Dec. 28, 1999), 5th Dist. No. 99 CA 32 ("There is no evidence in the record in this case, however, to suggest the trial court considered the factors set forth in R.C.3109.051(D) in determining visitation that is in the best interest of the parties' minor children.")
 {¶ 56} In this case, the court focused solely on the custody factors and not on the visitation factors. Since the trial court did not even mention the R.C. 3109.051(D) factors in either its divorce decree or its findings of fact and conclusions of law, it abused its discretion in granting supervised visitation to appellant. Accordingly, appellant's first assignment of error has merit.
 {¶ 57} For the reasons stated above, the trial court's judgment is hereby affirmed as to its award of custody to appellee. The judgment is reversed as to the court's grant of supervised visitation and is remanded for the court to reconsider its grant of supervised visitation in consideration of the R.C.3109.051(D) factors.
Vukovich, J., concurs.
Waite, J., concurs.