OPINION
{¶ 1} Appellant Stephanie L. Smith nka Wahl appeals from the decision of the Muskingum County Court of Common Pleas, Domestic Relations Division, which finalized a shared parenting plan with Third-Party Appellee John Charles Guminski, the father of her son, Tyler. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant Smith nka Wahl gave birth to Tyler Smith in 1999, during her marriage to Douglas E. Smith. Appellee Guminski was subsequently determined to be Tyler's biological father, but he was not involved in his son's life until approximately February 2003. On August 22, 2003, following the establishment of paternity, appellee filed a motion for the allocation of parental rights. On December 5, 2003, appellee filed a motion for shared parenting. On October 6, 2004, on the eve of trial, appellant and appellee entered into a written Shared Parenting Agreement. This shared parenting plan in essence predominately gave appellant parenting time, while appellee, who resides near Philadelphia, Pennsylvania, was granted parenting time on approximately sixteen specified periods throughout the year. Appellant and appellee were to maintain such shared parenting "through August 2005." See Docket Filing 132. The plan further stated that "[t]he parents agree to mediate a subsequent parenting schedule and shall exchange financial information through counsel or the court mediator not later than June 15, 2005." Id. The shared parenting plan was adopted by the trial court on October 15, 2004.
 {¶ 3} On March 29, 2005, appellant filed a motion seeking to modify the shared parenting plan or to make the October 6, 2004 plan ongoing. The trial court conducted a hearing on appellee's motion on June 27, 2005. A judgment entry was issued on August 9, 2005; the shared parenting plan was therein modified such that Tyler would live predominately in Pennsylvania with appellee during the school year.
 {¶ 4} Appellant filed her notice of appeal on August 22, 2005. She herein raises the following two Assignments of Error:
 {¶ 5} "I. THE TRIAL COURT ABUSED ITS DISCRETION AND LACKED JURISDICTION TO REALLOCATE SCHOOL PLACEMENT (AKA RESIDENTIAL PARENT) TO THE FATHER WITHOUT A CHANGE OF CIRCUMSTANCES.
 {¶ 6} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO PROPERLY CONSIDER THE STATUTORY FACTORS; AND FAILED TO PROPERLY WEIGH THE ADVANTAGES AND DISADVANTAGES OF THE REALLOCATION OF PARENTAL RIGHTS."
 I. {¶ 7} In her First Assignment of Error, appellant contends the trial court abused its discretion in allocating the parties' rights via a shared parenting order. We disagree.
 {¶ 8} R.C. 3109.04(E)(1)(a) reads in pertinent part as follows: "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 {¶ 9} "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 {¶ 10} "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 {¶ 11} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 12} Appellant contends that altering the "school placement" status in the case sub judice from appellant to appellee was erroneous because there was no showing of a change in circumstances under R.C. 3109.04(E)(1)(a). However, this argument ignores the fact that the shared parenting order of October 15, 2004, pursuant to the parties' agreement, called for further mediation of the issue no later than June 15, 2005. Thus, appellant had previously agreed to further review of shared parenting issues, and we hold she is judicially estopped from now asserting a lack of change of circumstances. The doctrine of judicial estoppel precludes a party from assuming a position in a legal proceeding inconsistent with one previously asserted. SeeToops v. Toops, Guernsey App. No. 03CA18, 2004-Ohio-1771, ¶ 21, citing Bruck v. Mason (1992), 84 Ohio App.3d 398, 400,616 N.E.2d 1168. Moreover, we find the October 15, 2004 shared parenting order, which foresaw further negotiation or litigation by the parties by a date certain, is in the nature of a temporary order, despite the trial court's labeling of it as a final shared parenting decree. Our review of the trial court record indicates that appellee's original 2003 motions for allocation of parental rights and shared parenting were not finally resolved prior to the issuance of the judgment entry presently under appeal.[1] As such, the proceedings at issue pertained to a finalization of the parties' October 15, 2004 temporary allocation of parental rights and responsibilities, not a true "modification" thereof, and the "change of circumstances" criterion of R.C. 3109.04(E)(1)(a) is wholly inapplicable. SeeEsaw v. Esaw, Belmont App. No. 02BA6, 2003-Ohio-3485, ¶ 35-36.
 {¶ 13} Appellant's First Assignment of Error is therefore overruled.
 II. {¶ 14} In her Second Assignment of Error, appellant contends the trial court failed to consider the requisite statutory factors in ordering shared parenting. We disagree.
 {¶ 15} A trial court has the authority to order shared parenting over the objection of one of the parties, and the decision is entrusted to the court's discretion but must serve the best interests of the children. Simon v. Simon (Aug. 16, 1995), Medina App. No. 2384-M, citing R.C. 3109.04(A)(2) andBechtol v. Bechtol (1990), 49 Ohio St.3d 21, 22. Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence. Davis v. Flickinger
(1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159. Accordingly, as an appellate court, we review a trial court's decision allocating parental rights and responsibilities under a standard of review of abuse of discretion. Miller v. Miller (1988),37 Ohio St.3d 71, 74, 523 N.E.2d 846. An abuse of discretion occurs when the trial court's judgment is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 16} In determining the best interest of a child in matters addressing parental rights and responsibilities, R.C.3109.04(F)(1) directs that "* * * the court shall consider all relevant factors, including, but not limited to:
 {¶ 17} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 18} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 19} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 20} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 21} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 22} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 23} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 24} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 25} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 26} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 27} As an initial matter, we note the trial court commendably made a number of factual findings, even though appellant never requested findings of fact and conclusions of law as permitted by Civ.R. 52. When a party fails to request findings of fact and conclusions of law, the reviewing court must presume the trial court applied the law correctly and must affirm if there is some evidence to support the judgment. Bullion v.Gahm, Scioto App. No. 05CA2995, 2005-Ohio-5966, at ¶ 24 (citations omitted).
 {¶ 28} The evidence in the case sub judice indicates that appellant's ex-husband, Doug Smith, as well as Smith's family, were impacting appellee's relationship with Tyler. Tr. at 70-73, 269-270. Appellant's live-in boyfriend from 2003 to late 2004, Larry Bee, also acted to interfere with appellee's attempt to function as a father. For example, on Tyler's first day of school, Larry showed up with appellant at the school and insisted on accompanying appellant and appellee in the orientation process, despite appellee's request that he forgo doing so. Tr. at 55. In the fall of 2004, appellant met Keith Wahl, her current husband, at the shopping mall where she works as a business developer. Wahl insisted that appellant cease living with Bee if she wished to continue dating Wahl. Tr. at 260-261. Appellant did so, and married Wahl after a courtship of just a few months. Appellee found out about the marriage via a mass email appellant sent out.
 {¶ 29} Appellant points out that Tyler was faring quite well in school in Ohio, was involved in baseball, tap lessons, and church activities, and appears to be happy and well-adjusted socially. She further argues that "[h]er perceived moral status is irrelevant." Appellant's Brief at 16. However, we do not conclude that the trial court relied on any such moral quotient. Instead, evidence was provided indicating appellant's frequent moves, her allowance of several men to take on father roles for Tyler, and her recurrent undermining of appellee's companionship attempts with Tyler, all of which the trial court properly could consider in terms of appellant's level of stability as a parent. As a reviewing court, we recognize that "[t]hese types of cases present some of the most difficult and heart wrenching issues that courts are called to decide." Putnam v. Putnam, Washington App. No. 00CA32, 2001-Ohio-2471, Abele, P.J., concurring. Thus, while both parents in this case appear able to provide for Tyler's day-to-day needs, our review of the record, limited by the absence of findings of fact and conclusions of law, does not indicate that appellate reversal under the circumstances presented would be warranted against the trial judge who observed the evidentiary proceedings firsthand.
 {¶ 30} Appellant's Second Assignment of Error is therefore overruled.
 {¶ 31} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Muskingum County, Ohio, is affirmed.
By: Wise, P.J. Hoffman, J., concurs.
Edwards, J., concurs separately.
[1] We are cognizant that various visitation orders were granted by the court during this period, but visitation and the allocation of parental rights are distinct legal concepts. SeeIn re Gibson (1991), 61 Ohio St.3d 168, 171, 573 N.E.2d 1074; R.C. 3109.051; R.C. 3109.04. See, also, Brown v. Brown, Monroe App. No. 04-MO-13, 2005-Ohio-6936, ¶ 54.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Muskingum County, Ohio, is affirmed.
Costs to appellant.