OPINION *Page 2 
¶ {1} Plaintiff-appellant Anthony Campana (the father) appeals the decision of the Mahoning County Domestic Relations Court, denying his motion to reallocate parental rights and modifying his visitation notwithstanding his objection to the notice of intent to relocate that had been filed by defendant-appellee Jennifer Campana nka Simmers (the mother). The father claims on appeal that the mother's notice of intent to relocate to Wyoming with their child should have been dismissed. He then claims that his motion to modify custody should have been granted so that he was named the residential parent. In making these arguments, he urges that the trial court's decisions were contrary to the child's best interests.
¶ {2} Because a notice of intent to relocate is not itself sufficient changed circumstances to modify custody to the other parent, the trial court properly denied the father's motion for reallocation of parental rights. Moreover, the mother's notice of intent to relocate was not required to be dismissed merely because the father believed that remarriage is an invalid reason to file an intent to relocate.
¶ {3} As to the modification of visitation, we conclude that the court's entry applied the wrong factors in determining the child's best interests. That is, the best interest factors listed in R.C. 3109.04(F)(1) are to be used only for custody modification motions. It is the best interest factors listed in R.C. 3109.051(D) that are to be applied to visitation modification motions. Here, the court only cited and reviewed the factors in the custody statute (which would have been relevant to the decision to deny the father's motion to change custody) rather than also reviewing the factors in the visitation statute.
¶ {4} However, because of the detail of the court's entry, we conclude that the court considered a multitude of facts that coincide with all of the pertinent best interest factors applicable to visitation modifications as contained in R.C. 3109.051(D). Thus, we are able to review the court's decision to modify visitation. In doing so, we *Page 3 
conclude that the trial court's decision to modify the father's parenting time upon the mother's remarriage was not an abuse of discretion. For all of these reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE ¶ {5} The parties were married in 2000, and their son was born on May 29, 2003. In late 2005, they moved from Austintown, Ohio to a house in Columbiana, Ohio. Within months, the father moved out and then filed for divorce in April 2006. In January 2007, a magistrate issued a divorce decree, which granted residential parent status to the mother. The father objected only to a portion of the decision regarding separate property. A settlement on said dispute was entered in May 2007.
¶ {6} On June 18, 2007, the mother filed a form notice of intent to relocate to Alpine, Wyoming for the purposes of marriage and employment and an accompanying motion to modify the father's visitation to the court's standard long distance parenting time schedule. The father objected to the relocation and requested a hearing as to whether it was in the best interests of the child to modify parenting time. He also filed a motion to dismiss the mother's notice of intent to relocate, alleging that the mother's reason for seeking modification of visitation was insufficient as a matter of law.
¶ {7} The father thereafter filed a motion to reallocate parental rights so that he would be named residential parent. He urged that the mother's notice of intent to relocate constituted substantial changed circumstances and that changing custody would be in the child's best interests.
¶ {8} The magistrate heard testimony on October 15 and 16 and November 21, 2007. The father testified and also presented the testimony of his mother, his father, his girlfriend and his thirteen-year-old daughter. The father testified that he currently exercises visitation with the subject child two days during the week for four hours per day, every other weekend for forty-eight hours, every other holiday and six weeks in the summer. The father lives in his girlfriend's house in Warren, Ohio; also living there is the girlfriend's ten-year-old son, who has the same name as the subject child (resulting in the child at issue being called "Little [child's name omitted]" and the girlfriend's child being called "Big [child's name omitted]"). At the time of the hearing, the father and his girlfriend were expecting a new baby. *Page 4 
 ¶ {9} The father also has a thirteen-year-old daughter and an eleven-year-old son who live in Columbus, Ohio. These children generally visit him one weekend a month and two weeks in the summer, with the daughter sometimes skipping a weekend. The son is on medication for depression. The father presented testimony that the subject child is close to his older half-siblings. The father's parents testified that they live in Austintown and see the subject child during his visits with his father. The father opined that moving the child from Columbiana, Ohio to Alpine, Wyoming would be detrimental to the child due to the lack of family in Wyoming other than the mother and the distance from him and his family. He also believed that Alpine is too isolated with a population of less than 700 and expressed concern that the nearest emergency room is twenty-nine miles away in Jackson Hole.
¶ {10} The father's first wife testified that during their marriage, he did not act as caregiver to their two children. She also related incidents of violence against her during their marriage. She opined that the mother was a good caregiver to her children during their visitation, that her children would still see their younger half-brother if he moved to Wyoming and that the move will not be as devastating to the children as the father anticipates.
¶ {11} Then, the mother testified that during the parties' marriage, she stayed at home with the child. She is still the primary caregiver. She works part-time for a school district while her son goes to preschool. She described the role of both the paternal and maternal grandparents as passive and disputed that the paternal grandparents saw her son as often as they claimed. She expressed a desire for mandatory telephone calls between the father and the child twice per week upon her move. She opined that the father should exercise visitation longer than standard long distance visitation with the child, suggesting June 1 through August 1 and every Christmas.
¶ {12} The mother's fiancée is from this area but has lived in Wyoming for fifteen years. He is her age, has never been married and has no children. She met him many years ago through her father and was reintroduced to him in June 2006 while he was visiting his parents, who live in Canfield. They further developed their *Page 5 
relationship over the telephone. He came back for lengthy visits a few times, and she went there to visit twice, one time for ten days with her son.
¶ {13} It was expressed that the mother would only marry her fiancée if the court would allow her to relocate her son, who was said to get along well with the fiancée. If she was permitted to move, she planned to assist her fiancée in his "booming" tile-setting business which would allow her to work from home when she was not helping in the field. Her fiancée testified that he personally constructed his 1500 square foot log home along with a six-car garage, which property he estimates is now worth nearly half a million dollars. He also owns acreage in Montana.
¶ {14} The mother's evidence established that Alpine is a budding resort community outside of Jackson Hole, Wyoming. Jackson Hole was noted to be a large and growing community with museums and galleries. Grand Teton and Yellowstone National Parks are within an hour drive of Alpine. The mother found doctors, dentists and schools in the immediate area. There are playgrounds in the area and ten young children within two blocks. There is also a new public school under construction.
¶ {15} On January 11, 2008, the magistrate issued a seventeen-page decision which denied the father's motion to be named residential parent and modified his visitation rights, allowing the mother to relocate the child to Wyoming only after her marriage. The standard long distance visitation schedule was amended so that the father had a longer summer as requested by the mother. The father filed timely objections alleging that the mother presented insufficient reasons for modification of visitation and that the child's best interests would be served by remaining in Ohio near him and his family.
¶ {16} On April 3, 2008, the trial court overruled the father's objections and issued its own judgment denying the father's motions and allowing relocation. The father filed timely notice of appeal. The case was not fully briefed until October 2008.
 GENERAL LAW ¶ {17} As set forth in the divorce decree and in R.C. 3109.051(G)(1), a residential parent who intends to move, shall file a notice of intent to relocate at least sixty days before the planned move on the relevant form issued by the court. On the form relevant to situations where the relocation will result in more than two hours travel *Page 6 
time between the parents, the residential parent can request that the court adopt the standard long distance parenting schedule. The non-residential parent has sixty days to object to the change of visitation. If the non-residential parent objects, then a hearing is scheduled to determine whether it is in the child's best interests to revise the visitation schedule.
¶ {18} As will be established infra, visitation modification is governed by consideration of the factors contained in R.C. 3109.051(D), and custody modification is a different matter governed by a different statute with different standards. Specifically, the custody modification statute provides:
¶ {19} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of the children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or the child's residential parent and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies: * * *
¶ {20} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a). See, also, R.C. 3109.04(F)(1) (listing the relevant best interest factors).
¶ {21} The statute does not require a substantial change in circumstances for a custody modification. Still, the change must be one of substance, not a slight or inconsequential change. Davis v.Flickinger (1997), 77 Ohio St.3d 415, 417-418.
¶ {22} A trial court has wide latitude in considering all the evidence in a modification of custody case, and the court's decision on custody must not be reversed absent an abuse of discretion. Id. at 418, 421. The trial judge hearing a custody modification matter has the best opportunity to view the demeanor, attitude, and credibility of the witnesses. Id., citing Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80-81. The same abuse of discretion standard of review applies in *Page 7 
reviewing decisions on modification of parenting time. Booth v.Booth (1989), 44 Ohio St.3d 142, 144.
 ASSIGNMENT OF ERROR NUMBER ONE ¶ {23} Appellant sets forth two assignments of error, the first of which contends:
¶ {24} "THE COURT ERRED IN FAILING TO GRANT THE PLAINTIFF'S MOTION TO DISMISS THE DEFENDANT'S NOTICE OF INTENT TO RELOCATE."
¶ {25} The father argues here that the trial court should have dismissed without hearing the mother's notice of intent to relocate. Before specifically addressing this argument, we must point out an incorrect legal premise upon which his argument is based. The father suggests here that a modification of parenting time due to the requested relocation is actually a modification of parental rights and responsibilities that requires the use of R.C. 3109.04(E)(1)(a). However, his argument is incorrect.
¶ {26} The modification test in R.C. 3109.04(E)(1)(a) is for use when a party seeks to "modify a prior decree allocating parental rights and responsibilities for the care of the children." This statute does not refer to modification of companionship, parenting time or visitation schedule of the non-residential parent.
¶ {27} Rather, general parenting time matters are covered by R.C. 3109.051(C) and require only consideration of the child's best interests. In fact, an objection to a notice of intent to relocate and an accompanying request for modification of visitation has its own statutory test which similarly only requires a viewing of the child's best interests. R.C. 3109.051(G)(1).
¶ {28} The Supreme Court has confirmed that "modification of visitation rights is governed by R.C. 3109.051, and that the specific rules for determining when a court may modify a custody decree as set forth in R.C. 3109.04 are not equally applicable to modification of visitation rights." Braatz v. Braatz (1999), 85 Ohio St.3d 40, 44-45. This is because the statutory reference to modification of parental rights and responsibilities is a reference to custody and control, not visitation. Id. at 43. See, also, Fisher v. Hasenjager,116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 22, 26. The Supreme Court thus concluded that the modification of visitation is only subject to the best interest test.Braatz, 85 Ohio St.3d at 45. See, also, In the Matter of Kaiser, 7th Dist. No. 04CO9, 2004-Ohio-7208, ¶ 33. *Page 8 
 ¶ {29} Thus, a modification of visitation is only subject to the best interests test and is not subject to the changed circumstances test of R.C. 3109.04(E)(1)(a) or the test of R.C. 3109.04(E)(1)(a)(iii) dealing with whether the harm likely caused by a changed environment involved in a custody change. These additional elements would only have been applicable to his motion to reallocate parental rights. The underlying basis for the father's appeal is thus flawed at its core.
¶ {30} His flawed application of the various tests for modification explains, however, why the father believes that a certain Supreme Court case is favorable to his position under this assignment of error. SeeMasters v. Masters (1994), 69 Ohio St.3d 83. Contrary to the father's argument, Masters does not require dismissal of the mother's notice of intent to relocate.
¶ {31} In Masters, the residential parent filed a notice of intent to relocate the child to Tennessee due to remarriage and employment. Id. at 84. The father objected to the modification of his parenting time; he also filed a motion to change custody. The trial court modified custody on the basis that the mother intended to leave the state. The Supreme Court stated that the mother's notice only represented a desire to leave the state and not an intent to leave in the absence of court approval after statutory objection by the non-residential parent. Id. at 86. Thus, the Supreme Court concluded that the filing of the notice does not itself constitute the type of changed circumstances required by R.C. 3109.04. Id.
¶ {32} The father believes Masters is favorable to his position because he is under the aforementioned erroneous impression that changed circumstances are required before granting the mother's request for modification of the father's visitation rights contained in her notice of intent to relocate. To the contrary, as the court below stated,Masters is favorable to the mother's position here.
¶ {33} Testimony disclosed that the mother was not going to move to Wyoming (or marry her fiancée) in the absence of the court's modification of visitation. She filed the notice of intent to relocate in order to see if the father would object and then to see if the court would overrule his objection and find that modification of parenting time to the long distance visitation schedule was in the child's best interests. *Page 9 
 ¶ {34} The father did not allege that she will move even in the absence of court modification of his visitation, and he does not seek a custody change on any basis other than his opinion that his son should not move to Wyoming. As the Supreme Court held in Masters, the mother's mere filing of the notice for the court's input is not a changed circumstance that the father can use for a change of residential parent status. Notably, if the court refused to modify visitation as requested in the notice of intent to relocate, then there would be no move and no circumstances would have changed.
¶ {35} Consequently, the court did not err in refusing to grant the father's motion to dismiss the mother's notice of intent to relocate on its face and did not err in refusing to reallocate the status of residential parent to him. This assignment of error is thus overruled and the analysis within it overrules certain arguments presented in the next assignment of error as well.
 ASSIGNMENT OF ERROR NUMBER TWO ¶ {36} Appellant's second assignment of error alleges:
¶ {37} "THE COURT ERRED IN APPLYING THE STATUTORY BEST INTERESTS STANDARDS AND PERMITTING THE CHILD'S REMOVAL FROM THE STATE OF OHIO AND FAILING TO GRANT THE FATHER'S MOTION TO CHANGE RESIDENTIAL STATUS."
¶ {38} The father contends that in denying his motion to modify custody and in granting the mother's motion to modify his visitation, the court abused its discretion in weighing the best interest factors. We begin with the denial of custody modification. As analyzed above, there was not a sufficient change of circumstances for custody modification. As such, the trial court was not required to proceed to analyze the child's best interests as to custody modification.
¶ {39} However, as will be explained further below, the court analyzed only the best interest factors in R.C. 3109.04(F)(1), which relates to custody modification. This would be appropriate in analyzing the father's custody modification motion. However, when analyzing the mother's visitation modification motion, the court was required to utilize the best interest factors listed in R.C. 3109.051(D), which relates to visitation modification. As a result, we must set forth the custody factors and appellant's *Page 10 
argument regarding those factors in order to determine whether the court's order is reviewable, and to determine whether the court abused its discretion in determining the child's best interests.
¶ {40} The custody modification statute, R.C. 3109.04(F)(1), sets forth a list of the following factors to consider in determining the child's best interests: (a) the wishes of the child's parents; (b) the child's wishes expressed to the court; (c) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) the child's adjustment to home, school and community; (e) the mental and physical health of all persons involved in the situation; (f) the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; (g) whether either parent has failed to make all child support payments; (h) whether either parent or any member of the household of either parent previously has been convicted of certain criminal acts; (i) whether the residential parent has continuously and willfully denied parenting time rights; (j) whether either parent has established a residence, or is planning to establish a residence, outside this state. R.C. 3901.04(F)(1).
¶ {41} The magistrate went through the factors line by line and concluded that it was in the child's best interests for the mother to remain the residential parent. Appellant argues that the court abused its discretion in weighing these factors. He claims that three factors weigh in his favor regarding the child's best interests. As to (c), the father notes that the child has frequent and positive interaction with him, his two older children, his girlfriend and her child. He also points to his parents' testimony that they see him often. As to (d), the father argues that the child is adjusted to home, school and community. As to (j), the father states that the mother is planning to establish a residence outside of the state.
¶ {42} Even if we had to reach the best interest factors for modification of custody, the result of the court's weighing of the factors is not an abuse of discretion. Regarding (j), just as theMasters Court held regarding changed circumstances, the mere attempt to get modified visitation and the mere desire to move by itself does not justify a custody change. The trial court could rationally believe that the mother is not planning to relocate unless she is given court permission by way of modification of *Page 11 
visitation. Although two motions were pending before the court here (the mother's motion for modification of visitation and the father's motion for modification of custody), the Supreme Court has essentially ruled that the non-residential parent should first fight the modification of visitation rather than attempting a custody change in cases where the only concern is the filing of a notice of intent to relocate.
¶ {43} This same analysis would apply to (c) and (d). The move did not yet occur. Thus, these changes have not yet occurred. In any event, the court specifically made findings regarding (c) and (d) and considered the effect of the move. For instance, under (d), if modification of visitation is permitted, the home, school and community will change. However, a home could change for a mere move down the street; and continuity in school and community are not such pressing concerns for a preschooler. Under (c), the child will see his father, half-siblings and grandparents less often. Still, the trial court could rationally conclude that a four-year-old would be better off remaining in the custody of the primary caregiver since birth even if that caregiver wishes to remarry the person of her choice who lives out of state. In any event, due to the fact that the father's motion for custody was based only upon the anticipated move, this exercise was anticipatory under the circumstances of this case.
¶ {44} The real issue here is that in modifying parenting time, the trial court used the same best interest analysis that it used to alternatively support its denial of custody modification. That is, the court proceeded on the parenting time issue as if the factors to consider were those contained in R.C. 3109.04(F)(1). As analyzed above, R.C. 3109.04 pertains to custody, not visitation.
¶ {45} R.C. 3109.04(F)(1) expressly states that it applies to determining best interests pursuant to "this section" (meaning R.C. 3109.04) and that it applies only to the allocation of parental rights and responsibilities. It is established that the phrase "parental rights and responsibilities" means custody not visitation and that R.C. 3109.04
is inapplicable to visitation issues. Fisher v. Hasenjager,116 Ohio St.3d 53, 2007-Ohio-5589, citing Braatz, 85 Ohio St.3d 40.
¶ {46} Rather, it is the R.C. 3109.051(D) factors that are required to be considered in modifying parenting time. Braatz, 85 Ohio St.3d at 45. Pursuant to R.C. 3109.051(D), in determining parenting time matters under R.C. 3109.051, the court *Page 12 
shall consider all of the following factors: (1) the prior interaction and interrelationships of the child with the child's parents, siblings and other persons related by consanguinity or affinity; (2) the geographical location of the residence of each parent and the distance between those residences; (3) the child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule; (4) the age of the child; (5) the child's adjustment to home, school, and community; (6) any wishes and concerns of the child expressed to the court; (7) the health and safety of the child; (8) the amount of time that will be available for the child to spend with siblings; (9) the mental and physical health of all parties; (10) each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights; (11) prior convictions for certain offenses or acts resulting in abuse or neglect; (12) (applies only when person other than a parent seeks visitation); (13) whether the residential parent has continuously and willfully denied parenting time rights; (14) whether either parent has established a residence or is planning to establish a residence outside this state; (15) (applies only where person other than parent seeks visitation); (16) any other factor in the best interest of the child. R.C. 3109.051(D).
¶ {47} As the trial court explicitly applied the best interest factors in R.C. 3109.04(F)(1), it is clear that the trial court did not consciously apply the R.C. 3109.051(D) factors. Although divisions (c), (d) and (j) in R.C. 3109.04(F)(1) are nearly reflected in divisions (1), (5) and (16) of R.C. 3109.051(D), the latter statute lists the following additional factors that are not specifically listed in R.C. 3109.04(F)(1):
¶ {48} "(2) the geographical location of the residence of each parent and the distance between those residences; (3) the child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule; (4) the age of the child; (8) the amount of time that will be available for the child to spend with siblings; and, (10) each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights." R.C. 3109.051 (D).
¶ {49} Even though the father does not realize the use of R.C. 3109.04
was improper as to the modification of his visitation, we cannot review his best interest *Page 13 
argument as to such modification without applying the proper statute. The question is whether we should reverse and remand for application of the correct factors or whether we should find harmless error after reviewing the contents of the magistrate's order to determine if it can be construed as considering the proper factors even though it is clear that the court was not consciously applying the proper statute.
¶ {50} Where the trial court never weighed the R.C. 3109.051(D) factors in modifying visitation and instead improperly used the R.C. 3109.04(F)(1) factors, we have reversed and remanded to the trial court for consideration of the proper factors. Brown v. Brown, 7th Dist. No. 04MO13, 2005-Ohio-6936, ¶ 53-57. Some other courts have done the same.Bonner v. Deselm-Bonner, 5th Dist. No. 06CA15, 2007-Ohio-2173, ¶ 83, 97;Flynn v. Flynn, 10th Dist. No. 02AP-801, 2003-Ohio-990, ¶ 9 (because the trial court considered factors which it was not required to consider and ignored other factors which should have been a part of its review, the resulting order was not rendered in accordance with the applicable law). However, the Eleventh District has found harmless error after reviewing the contents of the trial court's entry in a similar situation.Braden v. Braden, 11th Dist. No. 2006-P-0028, 2006-Ohio-6878, ¶ 49.
¶ {51} Here, the magistrate's seventeen-page decision thoroughly reviewed the testimony and the factors in R.C. 3109.04(F), which statute allows consideration of any other factors the court finds relevant. The combination of the magistrate's all-encompassing review of the testimony and its express review of the custody factors, ended up satisfying R.C. 3109.051(D). In other words, although the magistrate specifically applied the wrong factors to the visitation decision, the magistrate's decision reflects it reviewed the same considerations listed in the correct factors. The detail in the magistrate's entry distinguishes this case from Brown, Flynn and the like.
¶ {52} In point of fact, some of the factors in R.C. 3109.04(F) are the same or similar to the factors in R.C. 3109.051(D). That is, the court actually considered "the prior interaction and interrelationships of the child with the child's parents, siblings and other persons related by consanguinity or affinity" under R.C. 3109.051(D)(1) when it considered "the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest" under R.C. 3109.04(F)(1). Related to (D)(1) is (D)(8), which looks at the time available *Page 14 
to spend with siblings. The court ended up satisfying this factor when it reviewed the visitation time the half-siblings have with the father.
¶ {53} The child's adjustment to home, school and community and plans to establish residence out of state are considerations in both statutes. As such, R.C. 3109.051 (D)(5) and (14) were both considered. The health and safety of the child, a factor under R.C. 3109.051(D)(6), was essentially considered because this is partially encompassed in the magistrate's review of the mental and physical health of all persons involved under R.C. 3109.04(F)(1)(e) and because the court discussed the child's current physical health and the access to medical care in Wyoming. The magistrate found a lack of crimes and a lack of abuse or neglect under R.C. 3109.04(F)(1)(h) and thus also actually considered R.C. 3109.051(D)(11). The magistrate considered whether the residential parent has continuously and willfully denied parenting time rights under R.C. 3109.04(F)(1)(i) and thus satisfied R.C. 3109.051(D)(13).
¶ {54} In addition, the magistrate noted the parties local addresses and stated that the mother wished to move to Alpine, Wyoming. We could construe this as considering the geographical location of the residence of each parent and the distance between those residences under R.C. 3109.051(D)(2). As for (D)(3), the court mentioned the child's school schedule, the mother's current work schedule, and the father's work schedule. The magistrate stated the child's date of birth and thus considered his age as required by R.C. 3109.051(D)(4).
¶ {55} Some factors are irrelevant such as the child's wishes as expressed to the court. Finally, as for R.C. 3109.051(D)(10), which considers each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, the court did analyze which parent was more likely to honor parenting time rights under R.C. 3109.04(F)(1)(f). The court also opined that interference with parenting time by either parent was not a problem.
¶ {56} It is well-established that a laundry list of the factors is not required. Brown, 7th Dist. No. 04MO13 at ¶ 55, citing Walther v.Newsome (Apr. 20, 2001), 11th Dist. No. 99-P-0107. Although the magistrate made a laundry list regarding the wrong statutory factors, the entirety of the magistrate's decision establishes that the court *Page 15 
thoroughly and thoughtfully considered a multitude of facts which fall under the proper visitation modification factors of R.C. 3109.051(D). Thus, under the totality of the circumstances in this case, the citation to the custody factors constitutes harmless error as the practical effect of the court's review is a consideration of the proper visitation factors.
¶ {57} The last issue is whether the trial court abused its discretion in finding that the child's best interests were served by modification of the father's parenting time to a long distance plus schedule. As aforementioned, a court's decision on modification of parenting time shall not be reversed absent an abuse of discretion. Booth v. Booth
(1989), 44 Ohio St.3d 142, 144. A trial court in this situation has wide latitude in considering all the evidence, and the trial court is in the best position to view the demeanor, attitude and credibility of the witnesses. Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418, citingSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80-81. "A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Id. See, also, State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24,40.
¶ {58} Here, the magistrate watched the witnesses testify. Credibility is for the magistrate in the first instance, and the magistrate could have determined that the child did not see his paternal grandparents as often as they claimed. The magistrate could have believed the testimony of the father's first wife concerning certain incidents that shed the father in an unfavorable light. The magistrate could have accepted testimony that the father did not participate much in caregiving in the past with any of his children and that whomever he lives with ends up taking over the main caregiver duties during visitation.
¶ {59} We reviewed the myriad of factors covered by the decision. The main relevant factors are the child's interaction with family, the mother's desire to relocate out of state and the distance in residences that will result. In considering these factors, the magistrate found that the child currently sees the father 20% of the time during the school year. The magistrate pointed out that the guardian ad litem recommended allowing the child's relocation. *Page 16 
 ¶ {60} The mother recently obtained a part-time job for a school system as a computer lab aide, and the court found that it would be difficult for her to obtain a full-time job in the system. It could be considered advantageous that she will have a flexible schedule working for her husband and that the non-field work portion of the job will allow her to work at home. Moving from an apartment to a home with a yard could be seen as beneficial to the child as well.
¶ {61} The court could rationally disregard the father's concerns about the detriments of rural living after hearing testimony on the growing and prosperous nature of the community, the new school being constructed, the neighborhood playgrounds, the children in the neighborhood and the easy drive to a large city with museums and galleries. In fact, the father himself moved this child to what could be considered a rural setting (albeit in a subdivision) just before leaving the mother. In any event, the court could conclude that, contrary to the father's contention, small town or rural living is not some major adjustment for a four-year-old. Living by two major national parks could also be considered an advantage.
¶ {62} The magistrate could rationally determine that the modified long distance visitation schedule will provide sufficient time for bonding with half-siblings and the father. Notably, the half-siblings are not near in age to the child at issue; rather, they are seven and nine years older than the child at issue. The magistrate heard that the half-sister is visiting her father less as she gets older and is more involved with friends. The magistrate heard that the eleven-year-old half-brother is on medication for depression but that the father fails to ensure this and other medications are taken during visitation, which once caused a depressive episode due to the sudden withdrawal of medication.
¶ {63} The magistrate could consider the effect of another child being added into the father's residence as his girlfriend is pregnant. With the girlfriend's child in the residence, that means five children during the weekend that the older half-siblings visit and three children during the subject child's time, one of whom has no relation to the child (and who has the same name, thus relegating the subject child to being called "little"). *Page 17 
 ¶ {64} Furthermore, the father expressed his belief that the child's relationship with his half-siblings was more important than the child's relationship with his mother. However, this opinion need not be validated as one could reasonably conclude that the relationship with the custodial parent is more important than the forty-eight hours per month spent with half-siblings. The magistrate could also consider the mother's proposed remarriage, which would not occur without modification of visitation, to be a positive event in the child's life.
¶ {65} Considering the deference we afford the fact-finder's decision, we conclude that the trial court did not abuse its discretion when it decided that the child's mother's remarriage and relocation to Wyoming and the resulting modification of visitation is in the child's best interests.
¶ {66} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs.
 Waite, J., concurs. *Page 1