[Cite as *Troyer v. Troyer*, 188 Ohio App.3d 543, 2010-Ohio-3276.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

TROYER,                                  )
                                         )       CASE NO. 09 JE 5
        APPELLEE,                        )
                                         )
        v.                               )       OPINION
                                         )
TROYER a.k.a.,                           )
MULLET,                                  )
                                         )
        APPELLANT.                       )

CHARACTER OF PROCEEDINGS:        Civil Appeal from Common Pleas
                                 Court, Juvenile Division
                                 Case Nos. 2007 CV 00074,
                                 2007 CV 00075.

JUDGMENT:                        Affirmed.

APPEARANCES:

Mascio Law Offices and John Mascio,, for appellee.

Bryan Felmet and D. Brian Scarnecchia, for appellant.


JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Gene Donofrio

                                 Dated:  June 28, 2010


DeGenaro, Judge.

{¶1}    This timely appeal comes for consideration upon the record in the trial court,

the parties' briefs and their oral arguments before this court. Defendant-appellant, Wilma S. Troyer, a.k.a. Wilma S. Mullet, appeals the decision of the Jefferson County Court of Common Pleas, Juvenile Division, designating plaintiff-appellee, Aden Troyer, the legal custodian and residential parent of the parties' two minor children, granting Wilma visitation and placing limits on that visitation which included restraining four of Wilma's relatives from any contact with the children. Although Wilma assigns several errors challenging the trial court's custody determination and the location restrictions on her visitation, because of jurisdictional issues resolved previously by this court, the scope of this appeal is limited to the portion of the trial court's judgment restraining four members of Wilma's family from having contact with the children. Wilma argues that the trial court's restraining orders were an abuse of discretion. Upon review, this argument is meritless. There was competent-credible evidence supporting the trial court's decision that it was in the best interests of the children to have no contact with Samuel Mullet, Eli Mullet, Johnny Mullet, and Christopher Mullet. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶2}    This case involves a custody dispute regarding Aden and Wilma's two minor children: Mattie and Linda Troyer. Aden and Wilma were married on November 11, 2004. At the time of the marriage, both lived in the Bergholz, Ohio, Amish community. Mattie was born on November 27, 2005. Wilma's father, Samuel Mullet, is the Bishop of the Amish community in Bergholz. Due to disagreements with Samuel Mullet, Aden's parents were excommunicated from the Bergholz community, and they moved to another Amish community in Ulysses, Pennsylvania. This became a source of conflict between Wilma

and Aden. Other families also began to move from the Bergholz community.

**{¶3}** Wilma and Aden separated in early August 2006, after Wilma expressed concerns about the couple's sexual practices to her father and brother. Wilma also indicated she was concerned that Aden had been sexually abused by his mother as a child. Samuel Mullet refused to allow Aden to see Wilma and Mattie for several days after these allegations surfaced. According to Aden, Samuel Mullet told him he had to confess to sexual contact with his mother in order to see his wife and young child again. Aden then wrote a letter to that effect and was taken to publicly confess his actions to the Bishop of the Ulysses, Pennsylvania Amish community. According to Samuel Mullet, Aden confessed of his own free will and without any direction or coercion. On the other hand, Aden testified that his statements were false and that he made them only to try to make peace with Samuel Mullet and be reunited with Wilma and Mattie, from whom he had been separated for several days, which is an uncommon occurrence among the Amish. At trial, Aden explained that his statements about inappropriate sexual contact with his mother were unequivocally false. He said he admitted these acts only because he feared that if he failed to do so, Samuel Mullet would forbid him to see Wilma and Mattie. Notably, at trial, Jefferson County Sheriff Fred Abdalla testified that he investigated the incest allegations and found them to be false. Sheriff Abdalla also said that he believed Aden's letter was written under duress.

**{¶4}** Wilma and Aden remained separated for approximately nine months, during which time their second daughter Linda was born. In early May 2007, Aden and Wilma reunited for several weeks, and Aden met three-month-old Linda for the first time. Wilma

and Aden first went to Indiana for counseling and then to Pennsylvania. While they were in Pennsylvania, Wilma's brother, Eli Mullet, and cousin, Eli Miller, broke into Aden's parents' home in an attempt to find Wilma. Eli Mullet also assaulted Aden's father, Laverne. The Potter County Sheriff's department was called to the scene, and both Eli Mullet and Eli Miller were arrested and charged with breaking and entering.

{¶5} A preliminary hearing for the two men was held several days later in Coudersport, Pennsylvania. Wilma testified that she was safe with Aden, that Aden had not harmed her, and that she wished to stay with him rather than return to Ohio. However, after the hearing, several of Wilma's sisters convinced Wilma that she should return to Bergholz with the children. Wilma's sister, Lizzie Mullet, told her she would be excommunicated and would go to hell if she did not return. Wilma also asked Aden to return to Bergholz. Samuel Mullet told Aden that he could return to Bergholz and further told him: "You know we ain't going to take you down there and throw you in a manure pit." Aden took this as a threat and did not go with Wilma and the children. Instead, he remained in Pennsylvania.

{¶6} On September 14, 2007, Aden filed a complaint for allocation of parental rights and responsibilities in the Jefferson County Court of Common Pleas, Juvenile Division, in which he asked the court to designate him the residential parent of Linda and Mattie. Aden also filed a motion seeking custody of the children during the pendency of the proceedings. Attached to this motion were affidavits executed by Aden and Sheriff Abdalla.

{¶7} The trial court granted Aden's motion, issuing an ex parte judgment entry on

September 14, 2007, which designated Aden the residential parent of both the children and directed Sheriff Abdalla to take the children into his custody and to place them in the custody of Aden. The order also enjoined Samuel and Eli Mullet from contact with the minor children. Sheriff Abdalla served the order on Wilma while she was teaching at the one-room Amish schoolhouse in Bergholz, and retrieved Mattie and Linda.

**{¶8}** A hearing on the ex parte order was continued by agreement of the parties until October 5, 2007. In the meantime, the trial court issued an order granting Wilma visitation from September 28, 2007, until October 1, 2007, which was restricted to the residence of Andy and Nancy Yoder. Samuel Mullet and Eli Mullet continued to be restrained from contact with the minor children.

**{¶9}** Aden presented several witnesses at the October 5, 2007 hearing that the parties later stipulated would be used for purposes of the final custody hearing. Wilma failed to file a transcript of the October 5, 2007 hearing as part of the record before this court; however, a review of the record and briefs reveals that most of the testimony presented on that date was essentially duplicative of other testimony presented later in the proceedings.

**{¶10}** On October 10, 2007, Wilma filed a counterclaim for allocation of parental rights and responsibilities. On October 11, 2007, the magistrate issued an order stating that the parties had conferred and reached an agreement that the ex parte order of September 14, 2007, would remain in effect, and Aden would be designated the residential parent of the minor children. The order designated Wilma the nonresidential parent during the pendency of the proceedings and granted her parenting time every other Thursday at

9:00 a.m. until Monday at 5:00 p.m., at the residence of Andy and Nancy Yoder. Finally, the magistrate lifted the restraining order as it pertained to Samuel Mullet and Eli Mullet for purposes of Sunday church attendance and Sunday family activities only.

{¶11} Both parties were ordered to submit to psychological testing, and a guardian ad litem was appointed to represent the interests of the minor children.

{¶12} On November 15 and 16, 2007, Aden presented the remainder of his witnesses. On November 20, 2007, the magistrate issued an order detailing Wilma's parenting time pending the resumption of the final hearing in January 2008. This order stated that Samuel Mullet and Eli Mullet would continue to be enjoined from contact with the minor children, subject to Sunday church attendance and Sunday family activities. The order also added that Christopher Mullet would be enjoined from contact with the minor children subject to the Sunday church and family activities. Finally, the order added that these three individuals shall not be left alone with the minor children.

{¶13} Psychological evaluations were conducted on the parties and received by the court on December 19, 2007. Wilma presented her lay witnesses on January 8 through 11, 2008.

{¶14} The magistrate issued an order on January 29, 2008, that added additional restrictions to Wilma's visitation. Specifically, the magistrate directed that Wilma's visitation should be on weekends when the Bergholz community does not have church service so as not to interfere with Wilma's parenting time. Further, the magistrate added Wilma's brother, Johnny Mullet, to the list of family members who were restrained from contact with the minor children. The magistrate also made the restraining orders more stringent,

ordering: "[a]t no time are Chris Mullet, Eli Mullet, Johnny Mullet, or Sam Mullet (Bishop) to have any contact with the minor children." Finally, the magistrate ordered that the children were not permitted in the Bergholz community at any time unless consent is given by the court.

**{¶15}** Wilma presented several expert witnesses on March 10, 2008. Aden did not present any experts of his own, as he chose to rely on the conclusions contained in the psychological evaluations. The guardian ad litem issued his report on April 21, 2008.

**{¶16}** During trial, there was extensive testimony about the culture in Bergholz, Ohio, Amish practices, Wilma's family, Aden's family, and the conflicts between the two families. Relevant to the issues in this appeal was extensive testimony about the past conduct of Wilma's father, Samuel Mullet, and Wilma's brothers—Eli, Johnny and Christopher Mullet. This testimony will be discussed in more detail in the analysis of the first assignment of error below.

**{¶17}** During the pendency of this action, Wilma filed separately for divorce in the Jefferson County Court of Common Pleas, Domestic Division, Case No. 07 DR 312. The parties were subsequently granted a divorce on March 14, 2008. The record of this case was supplemented with a transcript of the final divorce hearing.

**{¶18}** On May 16, 2008, the magistrate issued a final decision on custody, in which he recommended that the court grant Aden's complaint for allocation of parental rights and responsibilities. The magistrate further recommended that Aden be designated the residential parent and legal custodian of the minor children. Finally, the magistrate recommended that Wilma's parenting time take place every other Thursday at 10:00 a.m.

until Tuesday at 5:00 p.m. at the residence of Wilma's brother, Joe Mullet, in Ulysses, PA, and that the visitation should occur on the off weekends with Wilma's church services so as not to interfere with the same. The decision did not address the restraining orders against Samuel, Eli, Christopher, and Johnny Mullet.

{¶19} Following a request by Wilma, the magistrate issued findings of fact and conclusions of law on October 30, 2008, which also failed to address the restraining orders. Wilma filed a request for oral hearing, and request for consideration of additional evidence, as well as objections to the magistrate's decision on December 5, 2008.

{¶20} In a January 30, 2009 judgment entry, the trial court overruled the request for oral hearing and request for consideration of additional evidence. The court overruled Wilma's objections to the magistrate's decision and approved the magistrate's findings of fact and conclusions of law. The court further adopted the magistrate's decision in its entirety with the exception that the court provided a specific schedule for Christmas parenting time; ordered that parenting time take place only in Pennsylvania but not be restricted to the home of Wilma's brother Joseph; and added that "under no circumstances shall parenting time take place in Bergholz, Ohio." Again, there was no mention of the restraining orders against Wilma's family members.

{¶21} At a February 6, 2009, hearing on a contempt motion, Aden's counsel brought up the fact that the January 30, 2009 order did not address the restraining orders and asked the magistrate for clarification. The magistrate indicated he would bring that issue to the attention of the trial judge, who could then render a decision accordingly.

{¶22} On February 13, 2009, the trial court issued a nunc pro tunc judgment entry.

Although labeled nunc pro tunc, the February 13, 2009 judgment contains substantive changes that were not included in the January 30, 2009 judgment, namely that: "All prior restraining orders are to remain in full force and effect." In all other respects, the February 13, 2009 entry is identical to the January 30, 2009 entry.

{¶23} Wilma filed a notice of appeal from the February 13, 2009 nunc pro tunc entry with this court on March 9, 2009. On March 12, 2009, Aden filed a motion to dismiss this appeal. Aden argued that the appeal was untimely, as a nunc pro tunc judgment entry does not extend the time for filing a notice of appeal. Aden urged this court to dismiss this appeal as untimely because the notice of appeal was not filed within 30 days of the January 30, 2009 order. Wilma responded that the focus of this appeal is to challenge the restraining orders, the language about them having been first added to the trial court's February 13, 2009 judgment entry, from which she timely appealed.

{¶24} On May 29, 2009, this court overruled Aden's motion to dismiss. However, this court specified:

{¶25} "Appellant is limited in this appeal to the substance of the judgment entry filed on February 13, 2009. Should appellees believe that appellant is addressing an error which relates to a previous judgment from which no timely appeal was taken, the appellees are to bring such issue to this Court's attention prior to filing their amended answer brief."

{¶26} Wilma filed her appellant's brief on July 23, 2009. On July 23, 2009, Aden filed a motion to strike, arguing that several of Wilma's assignments of error raise issues pertaining to child custody, which was resolved in the January 29, 2009 judgment from which Wilma did not timely appeal, and therefore in violation of this court's May 29, 2009

order.

**{¶27}** On September 11, 2009, this court issued a judgment entry:

**{¶28}** "Insofar as any assignments of error seek to change the final judgment of January 30, 2009, wherein appellee was designated as residential parent, it will be disregarded pursuant to this Court's May 29, 2009 judgment entry. As previously noted, this appeal is limited to a review of the restraining order, which was language added into the February 13, 2009 judgment entry. This Court will only address assignments of error properly before the Court."  On September 14, 2009, Aden filed an answer brief.

### Restraining Orders against Wilma's Family Members

**{¶29}** In her first of four assignments of error Wilma asserts:

**{¶30}** "The trial court erred in restraining the grandfather, Samuel Mullet, and uncles, Johnny Mullet, Eli Mullet and Christopher Mullet from all contact with two minor children, Mattie Troyer and Linda Troyer, their granddaughters and nieces respectively, without probative evidence that either their alleged immoral or bad behavior of their Amish religious beliefs and practices had a direct adverse harm on the two children."

**{¶31}** At their core, these restraining orders are restrictions placed upon Wilma's visitation with her children.  See, e.g., *Callender v. Callender*, 7th Dist. No. 03-CA-790, 2004-Ohio-1382, at ¶ 30-31 *(*treating court's order that the children have no contact with appellant's ex-girlfriend as a restraint on visitation).  Matters concerning visitation rights are reviewed for an abuse of discretion. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028.  Abuse of discretion means more than an error in judgment, but rather that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v.*

*Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

**{¶32}** Visitation rights, also known as "parenting time" rights of the nonresidential parent, are governed by R.C. 3109.051: "If a divorce, dissolution, legal separation, or annulment proceeding involves a child and if the court has not issued a shared parenting decree, the court * * * shall make a just and reasonable order or decree permitting each parent who is not the residential parent to have parenting time with the child at the time and under the conditions that the court directs, unless the court determines that it would not be in the best interest of the child to permit that parent to have parenting time with the child and includes in the journal its findings of fact and conclusions of law." R.C. 3109.051(A).

**{¶33}** As an overarching matter, with respect to matters of visitation, the central focus is the best interests of the children. See R.C. 3109.051(A) through (D); *Kelm v. Kelm* (2001), 92 Ohio St.3d 223, 226, 749 N.E.2d 299. "A trial court may limit or restrict visiting rights of a party in order to further the child's best interest." *Callender,* 2004-Ohio-1382*,* at ¶ 31. The court has the "power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child." Id., quoting *Anderson v. Anderson*, 147 Ohio App.3d 513, 2002-Ohio-1156, 771 N.E.2d 303, at ¶ 18, and *Jannetti v. Nichol* (May 12, 2000), 7th Dist. No. 97 CA 239.

**{¶34}** R.C. 3109.051(D) sets forth 15 visitation best-interest factors that the trial court must consider when determining visitation issues. As a threshold issue, we address the fact that neither the trial court nor the magistrate cited or specifically addressed the R.C. 3109.051(D) factors when considering whether the four Mullets should be restrained

from contact with the children during Wilma's visitation. Instead, the court analyzed everything under the R.C. 3109.04(F) custody best-interest factors.

**{¶35}** In the past, this court has reversed and remanded when there was no consideration of the R.C. 3109.051(D) factors. For example, in *Brown v. Brown*, 7th Dist. No. 04-MO-13, 2005-Ohio-6936, this court held that it was an abuse of discretion for the trial court to order supervised visitation when the trial court "focused solely on the [R.C. 3109.04(F)] custody factors and not on the [R.C. 3109.051(D)] visitation factors." Id. at ¶ 56. More recently, however, in *Campana v. Campana*, 7th Dist. No. 08 MA 88, 2009-Ohio-796, this court held that when the trial court's decision evinced consideration of the relevant visitation factors, the court's citing the custody factors was harmless error and therefore not grounds for reversal. Id. at ¶ 56. In *Campana*, this court distinguished *Brown* because the magistrate's decision in *Brown* failed to demonstrate the requisite consideration of the relevant factors. Id. at ¶ 51. Accord *Bernard v. Bernard*, (Jan. 30, 2002), 7th Dist. No. 00 CO 25, 2002 WL 206411, at * 7 (it is not an abuse of discretion where the journal entry shows that some of the visitation factors were addressed.)

**{¶36}** The present case is analogous to *Campana*. Here, although the court did not specifically cite the visitation best-interest factors, its judgment, along with the magistrate's decision that it adopted, did evince consideration of the relevant factors. Moreover, most of the R.C. 3109.051(D) visitation factors pertinent to the issues in this appeal have analogues within the R.C. 3109.04(F) custody best-interest factors. Compare R.C. 3109.051(D)(1) (the prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity), (D)(5) (the child's

adjustment to home, school, and community), (D)(9) (the mental and physical health of all parties), and (D)(15) (any other factor in the best interest of the child) with R.C. 3109.04(F)(1)(c) (the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest), (F)(1)(d) (the child's adjustment to the child's home, school, and community), and (F)(1)(e) (the mental and physical health of all persons involved in the situation). And although the custody factors do not contain a specific provision regarding the "health and safety of the child," as the visitation factors do in R.C. 3109.051(D)(7), it is evident that the trial court gave significant consideration to this factor. Accordingly, any error on the part of the trial court in failing to specifically refer to the R.C. 3109.051(D) visitation best-interest factors was harmless.

{¶37} Wilma argues, however, that the trial court looked beyond the best interests of the children and considered issues of religion and morals when making its decision to prohibit the four Mullets from having contact with the children during visitation. The trial court's consideration of morals, lifestyle choices, religion, and sexual preferences is not per se an abuse of discretion. *Dexter v. Dexter*, 11th Dist. No. 2006-P-0051, 2007-Ohio-2568, at ¶ 32. Rather, such evidence may be considered to the extent that it has a direct adverse impact on the child. *Pater v. Pater* (1992), 63 Ohio St.3d 393, 588 N.E.2d 794, paragraph one of the syllabus; *Anderson v. Anderson* (2002), 147 Ohio App.3d 513, 520, 524, 771 N.E.2d 303.

{¶38} In *Pater*, the Ohio Supreme Court held that the trial court abused its discretion by denying the mother custody based on her religious practices and by ordering

that the mother shall not teach or expose her child to her religious faith during visitation, where there was no evidence that the religious practices would adversely affect the mental or physical health of the child.  Id. at 399-402.  Similarly in *Anderson*, this court held that the trial court abused its discretion by prohibiting the presence of any unrelated male during the mother's visitation, where the trial court gave no explanation as to the direct adverse impact on the children, but instead commented on the mother's questionable morals and her numerous extramarital affairs.  Id. at 520, 522.

**{¶39}**  Here, Wilma argues that there was likewise no evidence presented that the conduct of Samuel, Johnny, Eli, and Christopher Mullet had a direct adverse impact on the minor children, especially because many of the problematic incidents occurred when Mattie and Linda were infants, or in some cases, before they were born.  However, the direct-adverse-impact test does not apply to this case.

**{¶40}**  The situation presented here is distinguishable from that in *Anderson* and *Pater* because the visitation restraints at issue in this appeal are not morally or religiously motivated.  Rather, the trial court here restrained Wilma's family members from contact with the minor children out of a general concern for the children's safety and welfare.  For example, the trial court expresses concern that Christopher Mullet had confessed to molesting children.  The court further notes the "disturbing testimony" about the behaviors of Wilma's other family members, including Eli Mullet's psychotic episode and the family's response to it; Johnny Mullet's malicious behavior towards his brother William in the presence of William's children; and Samuel Mullet's decision to close the Amish school for an entire school year.  Thus, Wilma's contention that the trial court's restraining orders

were put in place due to moral or religious concerns is unfounded.

**{¶41}** A similar argument was made by the appellant and rejected by this court in *Bernard*, 2002 WL 206411. There, the appellant-mother claimed that the trial court had erred by restricting her visitation because of her live-in boyfriend. The mother claimed that there was no evidence that the boyfriend had a direct adverse impact on the children, especially considering that the children had never met him. This court rejected the mother's assertion that the court's restrictions were based on moral concerns and thus held that the direct adverse-impact test was inapplicable. Id. at * 7Specifically, this court stated:

**{¶42}** "[T]he trial court's ruling was based on the safety, health, and best interests of the children. Evidence was presented that [the boyfriend] supplied marijuana to his daughter and that drug use occurred in [the boyfriend's] house. Evidence was also presented that [the boyfriend] threatened [the mother's] life twice and during one of those threats [the mother] took her children to her parents to ensure their safety. *The conditions were put in place to protect the best interests of the children.* For these reasons, the trial court did not abuse its discretion by imposing limitations on visitation." (Emphasis added.) Id.

**{¶43}** Similarly, in the instant case, the trial court limited Wilma's visitation, not out of moral or religious concerns, but rather out of concerns for the safety and welfare of the children. Accordingly, no direct adverse impact upon the children must be shown to uphold the restraining orders. Rather, we will examine whether the trial court abused its discretion in determining that it was not in the best interests of the minor children to have contact with each of the four Mullets. Id.; see also *Callender*, 2004-Ohio-1382, at ¶ 32-34 (applying the

best-interest test, and not requiring proof of direct adverse harm, with regard to order that the children have no contact with the father's ex-girlfriend.) Each restraining order at issue in this case will be discussed in turn.

*Samuel Mullet*

**{¶44}** The trial court did not abuse its discretion by prohibiting Samuel Mullet from contact with the minor children. Samuel Mullet prevented Aden from having contact with his children for nine months, during which time Aden missed the birth of his second child. Aden testified that Samuel Mullet told him he had to admit to a false incestuous relationship with his own mother or he would not be permitted to see his wife and children. There was testimony that Samuel Mullet, even taking into account his role as Bishop, exerted an inordinately large amount of control over the members of the Bergholz community. Sheriff Abdalla testified that he received numerous complaints in this regard, including complaints that Samuel Mullet had threatened to kill various members of the community, including the sheriff. Sheriff Abdalla believed the people of Bergholz were extremely fearful of Samuel Mullet.

**{¶45}** Emanuel Schrock, whose daughter married one of Samuel Mullet's sons, testified that Samuel Mullet became angry at him for helping his brother move away from Bergholz and that in response, Samuel prohibited Emanuel and his wife from all further contact with their daughter and grandchildren.

**{¶46}** Samuel's son Joseph Mullet testified that he believes that his father controls Wilma's choices. Joseph Mullet also testified that Samuel Mullet made threats against his life and against the lives of his brother Samuel Mullet Jr. and Sheriff Abdalla. Joseph

Mullet testified further that he was concerned for his father's mental health and tried to get him professional help. Atlee Miller, the Bishop of the Amish church in Ulysses, Pennsylvania was concerned enough to attempt to have Samuel Mullet probated.

{¶47} Further, Samuel Mullet reacted to the serving of custody papers upon his daughter by closing the Amish schoolhouse in Bergholz for an entire year, a reaction the trial court and the guardian ad litem found unreasonable based on the circumstances. Thus, there is competent, credible evidence demonstrating that it is not in the best interests of the children to have contact with Samuel Mullet.

*Johnny Mullet*

{¶48} The trial court did not abuse its discretion by prohibiting Johnny Mullet from having contact with the minor children. There was testimony that in February 2007, Johnny Mullet acted maliciously towards his brother William Mullet and that some of this behavior occurred in the presence of William's young children. William and his family had moved away from Bergholz and when they returned were denied access to their house by Johnny Mullet, who admittedly felled large trees in the driveway and nailed the windows shut. When this incident occurred, there were two to three inches of snow on the ground. William Mullet and his family were forced to immediately flee Bergholz. Johnny Mullet testified that he felt he did the right thing by preventing William and his family from accessing their house in this way. Johnny felt this conduct was justified because he and Samuel Mullet had cosigned with William on the Mennonite church loan obtained to build the house. However, the guardian ad litem expressed serious concerns about this incident.

{¶49} In a separate incident, William went to retrieve a horse and buggy, and Johnny admitted holding William down on the ground in the presence of William's young children. Lizzie Mullet testified that William's children witnessed this incident and were crying. Again, Johnny testified he believed this conduct was right. The guardian ad litem also expressed concerns over this incident.

{¶50} Finally, Johnny admitted holding his brother Eli Mullet down on the ground in freezing temperatures throughout the night while Eli had a psychotic episode in 2005. In sum, there is competent, credible evidence demonstrating that it is not in the best interests of the children to have contact with Johnny Mullet.

*Eli Mullet*

{¶51} The trial court did not abuse its discretion by prohibiting Eli Mullet from having contact with the minor children. Eli has a history of mental-health issues, namely a psychotic episode that lasted for several days and was witnessed by young children in the community, including some under the age of ten. During this episode, Eli attempted to grab a gun to shoot at his father. Eli's mother, Martha Mullet, agreed that this event was "terrifying" for the children in the community. Eli's sister, Lizzie Mullet, who was 15 at the time, also witnessed Eli being held down outside on the ground overnight in freezing temperatures during his psychotic break. Eli's sister Alma was 17 at the time, and Eli's episode caused her a great deal of stress and insomnia. Eli was subsequently admitted to a mental-health facility in Cambridge for 11 days.

{¶52} Further, Eli threatened the life of Sheriff Abdalla three separate times— threats the sheriff took seriously. During his testimony, Eli admitted that he had made

these threats and that he had pleaded guilty to three charges in connection with them. Finally, Eli broke into the home of Aden's father, Laverne Troyer. Once inside, Eli had demanded to see Wilma and had assaulted Laverne by pulling on his beard. Eli admitted fault and testified that he intended to plead guilty to charges in Pennsylvania in connection with that incident.

**{¶53}** The guardian ad litem expressed serious concerns about the minor children having contact with Eli, stating: "Eli Mullet has undergone psychotic episodes in the presence of children, is currently unmedicated for any mental disorder, and appears intimidating to the point of appearing to be a violent person."

**{¶54}** In sum, there is competent, credible evidence that it is not in the best interests of the children to have contact with Eli during Wilma's visitation. Wilma's contentions to the contrary are meritless.

**{¶55}** We note that Wilma also challenges the trial court's refusal to hear additional evidence regarding Eli Mullet. Contemporaneous with filing objections to the magistrate's decision, on December 5, 2008, Wilma filed a request for oral hearing and a request for consideration of additional evidence. Among other things, Wilma requested that the court consider new evidence about Eli when deciding the objections. Specifically, Wilma sought to present evidence that Eli Mullet and his family had moved out of Bergholz to his wife's parents' community in Atlantic, Pennsylvania. Further, Wilma sought to introduce evidence that Eli had continued with his mental-health treatment. In light of this new evidence, Wilma asserted that any concerns about Eli had become moot.

**{¶56}** However, the issue whether to take additional evidence was decided in the

January 30, 2009 entry from which Wilma failed to timely appeal. Therefore, this issue is outside the scope of this appeal.

*Christopher Mullet*

**{¶57}** The trial court did not abuse its discretion in prohibiting Christopher Mullet from having contact with the minor children. There was uncontroverted testimony from witnesses for both sides that Christopher Mullet had sexually molested several young children in the Bergholz community. Plaintiff's Exhibit A includes written statements made by I.T., A.T., D.T., and R.T., in which they state that Christopher sexually molested them when they were children.

**{¶58}** Further, there was testimony that Christopher Mullet had confessed his abuse to the Bergholz Amish church and was forgiven and permitted to continue to reside in the community. As of the time of the hearings, Christopher had not been prosecuted. The guardian ad litem expressed serious concerns about Christopher Mullet's having contact with the minor children. Thus, there is certainly competent, credible evidence supporting the trial court's decision that it was not in the best interests of the minor children to have contact with Christopher Mullet.

**{¶59}** Wilma also challenges the trial court's refusal to hear additional evidence regarding Christopher Mullet. In her December 5, 2008 request for oral hearing and request for consideration of additional evidence, Wilma sought to introduce evidence that Christopher Mullet had subsequently been prosecuted for his crimes, convicted, found guilty, sentenced, and classified as a Tier II sex offender. Wilma wanted the trial court to consider this evidence when ruling on her objections to the magistrate's decision. Again,

this issue is outside the scope of our review because the decision not to hear additional evidence was decided in the January 30, 2009 entry from which Wilma failed to timely appeal.

**{¶60}** In conclusion, the trial court did not abuse its discretion by restraining Samuel Mullet, Johnny Mullet, Eli Mullet, and Christopher Mullet from contact with the minor children. There is competent, credible evidence demonstrating it is not in the best interests of the minor children to have contact with these four individuals. Therefore, Wilma's first assignment of error is meritless.

### Remaining Assignments of Error

**{¶61}** In Wilma's remaining three assignments of error, she asserts:

**{¶62}** "The trial court erred in restraining Wilma Mullet, the mother of Mattie and Linda Troyer, from taking her children with her to her Amish worship service in Bergholz, Ohio without probative evidence that her Amish religious beliefs and practices had a direct adverse harm on her two children or without a clear and affirmative showing that the conflicting religious beliefs of the father and mother affected the general welfare of the children."

**{¶63}** "The trial court erred in prohibiting the visitation of Wilma Mullet from occurring in Bergholz, Ohio when the restraining orders on Wilma Mullet, Samuel Mullet, Johnny Mullet and Christopher Mullet were improper because there was no probative evidence that either their alleged immoral or bad conduct or their religious beliefs had a direct adverse impact on the general welfare of Wilma's children, Mattie and Linda Troyer."

**{¶64}** "The trial court erred in denying custody to Wilma Mullet when the restraining

orders on Wilma Mullet, Samuel Mullet, Johnny Mullet and Christopher Mullet were improper because there was no probative evidence that either their alleged immoral or bad conduct or their religious beliefs had a direct adverse impact on the general welfare of Wilma's children, Mattie and Linda Troyer."

**{¶65}** We cannot address the merits of these assignments of error. As we explained in our September 11, 2009 judgment entry, we have no jurisdiction to address these issues because they were resolved in the January 30, 2009 final order, an order from which Wilma *did not* timely appeal.

**{¶66}** We note further that although Aden responds to Wilma's arguments about the trial court's decision to restrain her from conducting her visitation in Bergholz, Ohio, this issue is also outside the scope of our review. This issue was conclusively decided in the January 30, 2009 judgment entry, which states on page four: "All parenting time shall be in Pennsylvania. Under no circumstances shall parenting time take place in Bergholz, Ohio." The only new rulings added to the February 13, 2009 judgment entry, and hence the only rulings that may be reviewed by this court on appeal, are the restraining orders against Eli Mullet, Samuel Mullet, Johnny Mullet, and Christopher Mullet.

### Conclusion

**{¶67}** Wilma's first assignment of error is meritless. The trial court did not abuse its discretion by restraining Eli, Samuel, Johnny, and Christopher Mullet from contact with the minor children. There is competent, credible evidence in the record that contact with these individuals is not in the best interests of the children. We cannot reach the merits of Wilma's remaining assignments of error, as we lack jurisdiction to review issues that were

conclusively decided in an earlier order from which Wilma did not timely appeal. Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

VUKOVICH, P.J., concurs.

DONOFRIO, J., concurs in judgment only.